UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NICHOL B. PENNINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-088 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Nichol Pennington applied for disability benefits, alleging that she was disabled due to peripheral neuropathy, fibromyalgia, carpal tunnel syndrome, major depressive disorder, post-traumatic stress disorder, and anxiety. An administrative law judge found that she was not disabled, so her claim was denied. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

### I. FACTUAL BACKGROUND

Nichol Pennington claims that she is disabled due to a number of physical and mental conditions. She applied for disability benefits after she began experiencing pain and numbness in her hands and arms. Shortly thereafter, she began experiencing those symptoms in her legs as well. She was diagnosed with carpal tunnel syndrome and peripheral neuropathy. Her doctors later began to believe that her symptoms were caused at least in part by fibromyalgia, and several doctors opined either that she had or likely had fibromyalgia. She was also treated for anxiety and depression throughout this time. Ms. Pennington claimed that these various conditions limited her ability to work. In particular, she stated that she had difficulty holding onto objects,

and that she was limited in the amount of weight she could lift and the amount of time she could sit or stand. She also claimed that her mental conditions limited her ability to function.

In the decision from which Ms. Pennington is now appealing, an ALJ found that her only severe impairment was right median sensory neuropathy, referring to her carpal tunnel syndrome. In assessing Ms. Pennington's residual functional capacity, the ALJ found that Ms. Pennington could perform light work, subject to some sitting and standing conditions, and that Ms. Pennington could occasionally handle objects, among other limitations. The ALJ did not adopt any mental limitations. Based on testimony from a vocational expert, the ALJ found that a person with Ms. Pennington's residual functional capacity would not be able to perform Ms. Pennington's prior work, but could perform other jobs that exist in significant numbers. Accordingly, the ALJ determined that Ms. Pennington did not qualify as disabled. Ms. Pennington appealed that decision, but the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.[1] Accordingly, Ms. Pennington filed this action seeking review of that decision.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of

---

[1] The Court notes the unusually prolonged course this claim took through the agency. Ms. Pennington filed her application for benefits in December 2006, and received her first hearing before an ALJ in April 2010. The ALJ issued a decision denying her claim in August 2010, but the Appeals Council remanded the claim in June 2011. Ms. Pennington then had another hearing before an ALJ in October 2011, followed by a third hearing in October 2012, before the ALJ issued a decision in January 2013. Ms. Pennington then sought review by the Appeals Council, which did not act on her request until nearly four years later, in December 2016. Ten years is an extraordinary length of time to reach a final decision on a claim. Given the amount of time this claim has been pending, the Court hopes that the Commissioner will expedite its processing of this matter on remand.

disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).

Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a

significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Here, Ms. Pennington makes three arguments in support of reversal. She first argues that the ALJ erred in declining to incorporate limitations relative to her anxiety and depression in her residual functional capacity. Second, she argues that the ALJ failed to properly evaluate her alleged condition of fibromyalgia. Third, she argues that the ALJ failed to properly address the impact of her carpal tunnel syndrome on her residual functional capacity. For the following reasons, the Court agrees with Ms. Pennington on her second argument and finds that remand is required on that basis, so the Court does not resolve the remaining arguments.

Ms. Pennington argues that the ALJ's decision did not adequately evaluate whether she had a medically determinable impairment of fibromyalgia. Social Security Ruling 12-2p governs how an ALJ should evaluate the existence of fibromyalgia and its effect on a claimant's ability to work. SSR 12-2p. That Ruling provides two separate tests to determine whether the claimant has fibromyalgia. The first test requires: (1) a history of widespread pain; (2) the presence of at least 11 "tender points,"[2] located both above and below the waist and on both sides of the body; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. SSR 12-2p § II.A. The second test requires: (1) a history of widespread pain; (2) repeated manifestations of six of more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could cause those symptoms, signs, or co-occurring conditions were excluded. *Id.* § II.B. Thus, the basic difference is that the first test requires identifying the number and location of the claimants' tender points, while the second test requires evidence of at

---

[2] The Ruling identifies 18 tender-point locations around the body. The tender point is positive if the claimant experiences pain when a certain amount of pressure is applied to a given location. SSR 12-2p § II.A.2.

least six fibromyalgia symptoms, signs, or co-occurring conditions. *See Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016).

Here, several doctors expressed their opinions that fibromyalgia was a likely cause of Ms. Pennington's symptoms. However, in discussing the evidence of Ms. Pennington's fibromyalgia, all the ALJ said was that a doctor noted the presence of 12 tender points, but did not indicate their location. That would be a valid concern under the Ruling's first test, which requires that the tender points be located "bilaterally (on the left and right sides of the body) and both above and below the waist." *Id.* § II.A.2. However, the ALJ's analysis stopped there. The ALJ did not proceed to consider other evidence in the record that might have supported a finding of fibromyalgia under the Ruling's second test, nor does the decision suggest any awareness that the second test existed at all. That is despite the fact that the Ruling expressly contemplates that the second test would be useful when a medical report "does not describe the . . . location on the body of the positive tender points," which is precisely this situation. *Id.* § II.A.2.b n.6.

In defending the ALJ's decision, the Commissioner argues that the evidence was not substantial enough to warrant analysis under the second test. In particular, the Commissioner argues that there was no evidence that Ms. Pennington had six or more fibromyalgia symptoms, signs, or co-occurring symptoms, and that alternative causes had been excluded. The Court disagrees. The record contains evidence of at least six issues that the Ruling identifies as fibromyalgia symptoms, signs, or co-occurring conditions. Those include fatigue (R. 634, 648), depression (R. 507, 660), anxiety (R. 507), numbness (R. 26, 490, 492, 634), memory problems (R. 26, 634), and deep muscle tissue pain (R. 27). There is also evidence that Ms. Pennington's doctors had considered and excluded alternative causes for her symptoms. For example, Ms. Pennington was sent for an MRI to rule out multiple sclerosis as the cause of her symptoms, and

the test came back normal. (R. 493). One doctor also noted that Ms. Pennington did not have collagen vascular disorder, another potential cause. (R. 640–56). Another doctor expressly acknowledged in her treatment notes that fibromyalgia is a "diagnosis of exclusion," and she opined that Ms. Pennington's symptoms were "most c/w [consistent with] fibromyalgia." (R. 697). A number of medical records suggest that Ms. Pennington had peripheral neuropathy, which could explain some of her symptoms. As the ALJ's decision emphasized, however, there was also much evidence that tended to exclude peripheral neuropathy as an explanation for Ms. Pennington's condition. The ALJ's decision noted that one clinical examination "did not support a significant peripheral neuropathy," that the findings from another examination "do not strongly support peripheral neuropathy," and that an EMG showed "no generalized findings of polyneuropathy." (R. 28–29).

That evidence is sufficient to find that the ALJ should have at least discussed the second test in determining whether Ms. Pennington has fibromyalgia. *Thomas*, 826 F.3d at 959 (remanding because the ALJ addressed only the first test by "focusing exclusively on the lack of analysis of tender points," without also considering whether the claimant could meet the second test); *see Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling."). The Commissioner offers a number reasons why the ALJ may ultimately find that this evidence is insufficient to satisfy the second test. If those reasons had been in ALJ's decision, not merely the Commissioner's brief, this would be a different case. It is also possible that on remand the ALJ will still find that Ms. Pennington does not have a medically determinable impairment of fibromyalgia. However, the ALJ did not address the second test for fibromyalgia at all, and the Court cannot affirm the decision for reasons not

7

offered by the ALJ. *Thomas*, 826 F.3d at 959 (rejecting a similar argument, noting that "without any analysis for the ALJ, there is no basis for drawing any conclusions about what evidence he considered or overlooked"); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943).

This error requires remand. To begin with, the Commissioner does not argue that a failure to properly evaluate Ms. Pennington's fibromyalgia would be harmless, or that the ALJ still properly considered the evidence of any limitations, regardless of their cause. In addition, fibromyalgia is a condition that can result in exertional limitations, other physical limitations, and mental limitations. SSR 12-2p § VI.E.1. All of those sorts of limitations were at issue in this case, so concluding that Ms. Pennington had fibromyalgia could conceivably lead the ALJ to adopt a more limited residual functional capacity in any of those respects. The Ruling also notes that fibromyalgia can cause a person to "have bad days and good days," *id.* § VI.D, which could also color the ALJ's evaluation of the evidence of Ms. Pennington's symptoms and the resulting limitations. Accordingly, because the ALJ's evaluation of this condition could affect the residual functional capacity finding, and the Commissioner has not otherwise argued that an error in this respect would be harmless, the Court finds that remand is required for the ALJ to properly apply SSR 12-2p in considering whether Ms. Pennington has a medically determinable impairment of fibromyalgia.

## IV.  CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: February 26, 2018

                                                  /s/ JON E. DEGUILIO
Judge
United States District Court